IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

STATE OF WISCONSIN DEPARTMENT OF
WORKFORCE DEVELOPMENT, DIVISION
OF VOCATIONAL REHABILITATION,

                 Plaintiff,

       v.

UNITED STATES DEPARTMENT OF
EDUCATION, MARGARET SPELLINGS, in her
official capacity as Secretary of the United States
Department of Education, and JANET DICKEY,

                 Defendants.

OPINION and
ORDER

09-cv-011-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff State of Wisconsin Department of Workforce Development, Division of

Vocational Rehabilitation, seeks review of an arbitration panel's decision under the

Randolph-Sheppard Act, 20 U.S.C. § 107.  The panel found plaintiff liable to defendant

Janet Dickey for monetary and other relief because of its negligence in managing a food

service contract at Fort McCoy, Wisconsin, for which defendant Dickey was the licensed

blind vendor.  Plaintiff contends that the arbitration award was arbitrary and capricious,

lacked sufficient evidence, violated the Randolph-Sheppard Act and violated the Eleventh

1

Amendment.

After reviewing the administrative record and considering the parties' arguments, I am persuaded that the arbitration panel's award of prospective relief should be confirmed but that the Eleventh Amendment bars enforcement of its award of retroactive money damages.  The Act makes it clear that a state's participation in the Randolph-Sheppard program is conditioned upon its agreement to arbitrate disputes; but nothing in the Act says, either expressly or by "overwhelming implication," Edelman v. Jordan, 415 U.S. 651, 673 (1974), that the state may be required to pay retroactive damages to blind vendors dissatisfied with state actions.  Because I find that the Eleventh Amendment bars the panel's award of money damages, plaintiff's challenge to the panel's statutory authority to award damages is moot, as is its contention that the arbitration panel lacked any factual basis on which to award money damages to defendant Dickey.

I will uphold the panel's determination of liability and its holding that plaintiff must help defendant Dickey develop, expand and upgrade her present facility. By failing to object to defendant Dickey's right to a substantive remedy before the panel, plaintiff waived any argument on this point.  Finally, plaintiff has not shown that the panel's decision was arbitrary or capricious or that it was not based on substantial evidence.

2

RECORD FACTS

A.  The Randolph-Sheppard Act

The Randolph-Sheppard Act was enacted to provide employment opportunities for the blind by granting priority to blind persons who desire to operate vending facilities on federal property.  20 U.S.C. § 107(b).  The Act divides responsibility for the "blind vendor" program between state and federal agencies.  At the federal level, the Secretary of Education is responsible for interpreting and enforcing the Act's provisions and for designating state licensing agencies.  20 U.S.C. §§ 107a(a)(5), 107b; 34 C.F.R. §§ 395.5, 395.8.  At the state level, state licensing agencies implement the program.  Plaintiff State of Wisconsin Department of Workforce Development, Division of Vocational Rehabilitation, is the state agency designated to administer the Randolph-Sheppard Act in Wisconsin.

The Act gives state agencies the opportunity to gain access to vending and food service sites in federal buildings.  Agencies who want such access must apply to the Secretary of Education and agree to certain federal requirements.  State participation in the program is voluntary.

A person seeking a position as a blind vendor applies to the designated state agency and is licensed by that agency.  The state agency then applies to the federal government for placement of the licensee on federal property.  20 U.S.C. § 107b.  Once the state and federal government have agreed on an appropriate location for the vending facility, the state

3

licensing agency is responsible for equipping the facility and furnishing the initial stock and inventory.  20 U.S.C. § 107b(2).  The blind vendor thereafter operates as a sole proprietor who is entitled to the profits of the vending facility and who is responsible for the facility's losses.

Among the conditions of state participation in the Randolph-Sheppard program is the state's agreement to provide any blind licensee dissatisfied with any action arising from the operation or administration of the vending facility program an opportunity for a hearing before the state agency.  § 107b(6).  If the hearing does not resolve the matter, the licensee must be given an opportunity to submit any unresolved grievances to an arbitration panel convened by the Secretary of Education.  Id.  The Act makes the arbitration panel's decision subject to judicial review in federal court as a final agency action.  20 U.S.C. § 107d-1(a).

The State of Wisconsin has enacted legislation to insure its participation in the Randolph-Sheppard program.  Wis. Stat. § 47.02.  In addition, the Wisconsin Department of Workforce Development has promulgated standards and guidelines for the administration of a program of supervised business enterprises operated by blind persons.  Wis. Admin. Code § DWD 60.01.

### B.  The Fort McCoy Food Service Contract

In the late fall of 2002, plaintiff was awarded a contract under the Randolph-

4

Sheppard Act by the Department of the Army to provide full food and dining attendant service at Fort McCoy, Wisconsin. The contract had a six-month base period of April 1, 2003 to September 30, 2003 and four one-year renewable options that could be exercised at the Army's discretion.

To carry out its responsibilities under the Fort McCoy food service contract, plaintiff entered into a management services agreement with Blackstone Consulting, Inc., a full food service contractor known to have experience in military food service contracts and in managing contracts under the Randolph-Sheppard Act. Under the management service agreement, Blackstone agreed to provide technical and management services to plaintiff and whomever plaintiff appointed as the Randolph-Sheppard "blind business manager." Joseph D'Costa, the head of the Wisconsin Division of Vocational Rehabilitation Business Enterprise Program, supervised the management services agreement with Blackstone on behalf of plaintiff.

Plaintiff designated defendant Janet Dickey as the blind business manager for the Fort McCoy contract. With plaintiff's approval, defendant Dickey and Blackstone Consulting entered into a joint venture agreement under which Blackstone would "[p]rovide full food services" to Fort McCoy and "carry out a program of thorough training which is sufficient to prepare Janet Dickey to perform all duties associated with managing a military food service contract."

5

Defendant Dickey acted as the blind business manager at Fort McCoy from April 1, 2003 to August 2006.  Although the Army rated the performance of the food service contract for the period of April 1, 2003 to September 30, 2003 as either "very good" or "exceptional" in all categories, it found the performance of the contract only "acceptable" in 2004 and 2005.   In 2006, it started issuing deficiency notices to plaintiff regarding the performance of the contract and notified D'Costa of serious service problems at various Fort McCoy food service locations.  Additional communications followed but plaintiff was unable to effect changes in the performance of the contract that met the Army's requirements.

On August 2, 2006, D'Costa wrote to the Army to say that it was increasing staffing and had appointed defendant Dickey as the on-site interim primary contract manager, with responsibility for the overall management and coordination of the food service contract.  The Army found this unacceptable because Dickey did not have the experience or education required under the contract.

Eventually, plaintiff chose not to challenge the Army's evaluation of its performance or to seek to exercise its option for a fourth year of the contract.  On October 1, 2006, the Army contract for full food services at Fort McCoy ended.

### C.  Procedural History

On November 10, 2006, using the administrative remedies afforded under the

Randolph-Sheppard Act, defendant Dickey requested a hearing with plaintiff, in which she sought determination of the sufficiency of plaintiff's supervision of Blackstone Consulting and the Fort McCoy contract. A state evidentiary hearing was held on March 14, 2007. The hearing examiners concluded that it was not plaintiff's fault that the Fort McCoy contract was not renewed.

Following this determination, Dickey filed a complaint with the Secretary of Education, requesting arbitration. In her request, Dickey stated that plaintiff "was negligent in its oversight, responsibility of, and management of the Randolph-Sheppard Program in regards to the full food service contract at Fort McCoy . . . ." Three arbitrators, one appointed by plaintiff, one appointed by Dickey and one neutral chairman, convened a full evidentiary hearing to address Dickey's complaint in May 2008. On August 2, 2008, the panel ruled unanimously in favor of Dickey, finding that plaintiff had failed to perform its duties under the Randolph-Sheppard Act. In particular, the panel's decision provides:

> After review of the detailed record, it is abundantly clear that the Army has held Mr. D'Costa as primarily responsible for the failure of the contract. . . . [I]t is clear that after due notice and an opportunity to correct the deficiencies, the Army was about to cancel the contract, because of the repeated failures of [plaintiff] to provide the full service required and because of the inadequate staffing and missed meals. While Ms. Dickey undoubtedly had a responsibility and she tried to exercise it, she was repeatedly told, 'Let them handle it.' In fact, D'Costa told her one time he wasn't going to respond to her concerns until he got a Cure Notice. He certainly did get a Cure Notice.

7

The Department of the Army detailed its complaint explicitly, but the State of Wisconsin's agent did not properly respond.  Also, [plaintiff], rather than correcting these deficiencies, decided not to exercise its option for the fourth year.

The panel concluded that plaintiff's lapses were a direct cause of the Army's decision not to renew the Fort McCoy contract for another year and therefore, the direct cause of Dickey's loss of her vending site.  The panel awarded Dickey $225,000 in lost income and ordered plaintiff to "help in developing, expanding, and upgrading Ms. Dickey's current facility."

Plaintiff then filed this petition for review, naming the Secretary of Education, the United States Department of Education and Janet Dickey as defendants.  The federal defendants answered plaintiff's complaint, asserting their position that the arbitration panel's decision should be upheld, but also notifying the court that they would play a limited role in the case, which they did.  They filed no briefs on any issue raised by plaintiff.

OPINION

A. <u>Sovereign Immunity</u>

The Eleventh Amendment to the Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens

or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has read the amendment as applying to suits against a state by one of its own citizens, <u>Welch v. Texas Dept. of Highways & Public Transportation</u>, 483 U.S. 468, 472 (1987) (citing <u>Hans v. Louisiana</u>, 134 U.S. 1, 10 (1890)), as well as to any suit brought by a private party seeking to impose liability on a state agency that must be paid from public funds in the state treasury. <u>Edelman v. Jordan</u>, 415 U.S. 651, 663 (1974). A state's sovereign immunity can be limited in only a few circumstances:  by a valid exercise of congressional power, <u>Atascadero State Hospital v. Scanlon</u>, 473 U.S. 234, 238 (1985); (2) by the state's consent to suit in federal court, <u>e.g.</u>, <u>Lapides</u>, 535 U.S. at 623; or (3) by the state's decision to participate in a federal program clearly conditioned on such a waiver, <u>Edelman</u>, 415 U.S. at 673-74. Only the third limitation is implicated in this case.

Plaintiff did not raise the defense of sovereign immunity under the Eleventh Amendment during arbitration, but the general rule is that sovereign immunity may be raised at any point in a proceeding, <u>Pennhurst State School and Hospital v. Halderman</u>, 465 U.S. 89, 99 (1984), and is not waived by the state's litigation conduct. This rule has two limited exceptions:  if the party waiving the defense is empowered to do so, <u>McDonald v. State of Illinois,</u> 557 F.2d 596, 601 (7th Cir. 1977) (citing <u>Ford Motor Co. v. Dept. of Treasury of Indiana</u>, 323 U.S. 459, 466-69 (1945)), or, as noted above, if the state voluntarily seeks a federal forum to litigate state law claims. <u>Lapides v. Board of Regents of</u>

9

the Univ. System of Georgia, 535 U.S. 613 (2002).  Defendant Dickey has not cited any state law that vests power in plaintiff's counsel to waive Wisconsin's sovereign immunity and she has not shown that the holding in Lapides applies to this suit.  Plaintiff did not have a choice about bringing this suit in federal court; it is suing a federal agency and it is not asserting state law claims.

The Court of Appeals for the Seventh Circuit has never had occasion to address the intersection of state sovereign immunity and the Randolph-Sheppard Act.  The majority of the six circuit courts that have done so have held that states cannot use the Eleventh Amendment to shield them from participation in arbitration proceedings under the Act.  Two of the circuits based their decision on their reading of the amendment as referring only to judicial proceedings and not to arbitration proceedings.  Premo v. Martin, 119 F.3d 764, 769 (9th Cir. 1997) ("'the fundamental principle of sovereign immunity embodied in the Amendment limits the grant of judicial authority in Art. III'"; Eleventh Amendment did not purport to affect proceedings in tribunals established by statute) (quoting Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) and citing Ellis Fischel State Cancer Hosp. v. Marshall, 629 F.2d 563, 567 (8th Cir. 1980)); Tennessee Dept. of Human Services v. United States Dept. of Education, 979 F.2d 1162, 1166-67 (6th Cir. 1992) (same).  In Delaware Dept. of Health & Social Services v. United States Dept. of Education, 772 F.2d 1123, 1138 (3d Cir. 1985), the Third Circuit assumed that the Eleventh Amendment did

10

apply to arbitration proceedings, but it noted that it saw nothing in the amendment's text that would lead to that conclusion.

       These holdings are no longer good law.  In <u>Federal Maritime Commission v. South Carolina State Ports Authority</u>, 535 U.S. 743 (2002), the Supreme Court held that sovereign immunity prevents the "impermissible affront to a State's dignity to be required to answer the complaints of private parties" or "defend itself in an adversarial proceeding against a private party" in federal court or before an administrative tribunal of an agency.  <u>Id.</u> at 760; <u>see also</u> <u>New Hampshire v. Ramsey</u>, 366 F.3d 1, 21, n.19 (1st Cir. 2004) (noting that <u>Federal Maritime Commission</u> overruled holding in <u>Tennessee Dept. of Human Services</u>, 979 F.2d at 1167-68, that Eleventh Amendment applies only in Article III proceedings, not in arbitration).

       However, the Ninth Circuit's decision in <u>Premo</u>, 119 F.3d 764, did not rest solely on the nature of the proceeding.  The court of appeals found overwhelming evidence that Congress had conditioned state participation in the program on consent to arbitration, as well as to federal judicial enforcement.  <u>Id</u>. at 770.  The court cited each of the instances in the Act in which a participating state is told what its participation will mean:  agreeing to provide any dissatisfied blind vendor an opportunity for a fair hearing; agreeing to submit the grievances of any blind vendor to arbitration; agreeing that such arbitration is final and binding; and agreeing that the arbitration decision is subject to appeal and review as a federal

agency action, in other words, in federal court.  Id.  Similar reasoning led the Third Circuit to conclude in Delaware Dept. of Health, 772 F.2d 1123, that the state's agreement to participate in the Act acted as a waiver of any Eleventh Amendment immunity it had. "[A]fter full notice of the Act's requirements, one of which was an agreement to arbitrat[e], [the state] voluntarily made application with the Secretary to participate in the Randolph-Sheppard program.  The waiver of sovereign immunity with respect to arbitration could hardly have been made more clearly."  Id. at 1138.  The Eighth Circuit agreed that states choosing to participate in the program did so on the condition that they would submit to arbitration involving the grievances of any blind licensee.  McNabb v. United States Dept. of Education, 862 F.2d 681, 686 (8th Cir. 1988); see also Ramsey, 366 F.3d at 18 (same). In Georgia Dept. of Human Resources v. Nash, 915 F.2d 1482 (11th Cir. 1990), the court of appeals assumed without deciding that Randolph-Sheppard arbitration panels could award damages against the state in favor of blind licensees.

As the Supreme Court has held on a number of occasions, "a state waives its immunity defense only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." Atascadero State Hospital, 473 U.S. at 239-40.  The text of the Randolph-Sheppard Act provides the necessary "overwhelming" evidence that the participating states agreed to submit to arbitration, as the Court of Appeals for the Ninth Circuit explained in Premo, 119

12

F.3d at 770.  The natural reading of the specific provisions in the Act for resolving disputes is that by participating in the program, a state agrees to allow an arbitration panel to resolve any complaint of a vendor arising out of the program and fashion remedies for wrongs committed by state licensing agencies.

This holding does not determine the entire scope of the state's waiver of sovereign immunity.  The waiver of immunity to some form of relief does not necessarily extend to awards of monetary relief for past damages, such as those awarded by the arbitration panel in this case.  As the Court of Appeals for the Seventh Circuit held in a recent case, Congress may condition participation in a federal program upon a waiver of sovereign immunity to injunctive relief without effecting a waiver of the state's immunity from monetary damages awards.  Nelson v. Miller, 570 F.3d 868, 884-85 (7th Cir. 2009) (citing Lane v. Pena, 518 U.S. 187, 196 (1996) (holding that "Congress is free to waive the Federal Government's sovereign immunity against liability without waiving its immunity from monetary damages awards.")).

In Nelson, the question was whether states had waived their immunity to damage suits by accepting federal funds for state prisoners under the Religious Land Use and Institutionalized Persons Act (RLUIPA), which allows any person to "assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain *appropriate relief* against a government."  42 U.S.C § 2000cc-2a.  (Emphasis added.)  The court of appeals concluded

13

that although this language effected a waiver of state sovereign immunity to suits for injunctive relief, it was not the "unequivocal textual expression" required to waive sovereign immunity for monetary relief.  Id. at 884; see also Madison v. Virginia, 474 F.3d 118, 130-33 (4th Cir. 2006) (holding that "appropriate relief" language in RLIUPA  effected a state waiver of immunity from injunctive relief but not from damages awards).

Nelson reinforces the holding in Pennhurst State School and Hospital, 451 U.S. at 17-18, that if Congress intends to condition the states' participation in a federal program or receipt of federal funds on their waiver of sovereign immunity to damage suits, it must do so unambiguously so that the states are fully aware of the conditions to which they are agreeing.   In other words, Congress must "speak with a clear voice" when imposing conditions on a grant of federal money to states.  Id. at 17.

As in RLUIPA, the Randolph-Sheppard Act makes no reference to monetary relief or even to sovereign immunity generally.  The courts that found that the Randolph-Sheppard Act authorizes damage awards against states based their decisions on the ground that when the Randolph-Sheppard Act was enacted, Congress and states knew that arbitrators traditionally and frequently awarded damages, making it obvious to the states that agreeing to arbitration meant agreeing to waive immunity to damage awards.  Premo, 119 F.3d at 769-70; Delaware Dept. of Health and Social Services, 772 F.2d at 1137-38. Although there is some force to this approach, ultimately it is unpersuasive when viewed in light of other

14

decisions, such as Lane, 518 U.S. at 192; United States v. Nordic Village Inc., 503 U.S. 30, 34 (1992); and Nelson, 570 F.3d at 883, that hold to the contrary. "In analyzing whether a sovereign has waived its immunity, we strictly construe the scope of any alleged waiver in favor of the sovereign. We may not enlarge the waiver beyond what the language [of the statute] requires." Nelson, 570 F.3d 868, 883-84 (7th Cir. 2009) (citing Lane, 518 U.S. at 192). See also Library of Congress v. Shaw, 478 U.S. 310, 318-19 (1986) (when Congress amended 42 U.S.C. § 706(k) to equate liability of the United States as defendant for attorney fees to that of private person, its action did not demonstrate requisite affirmative congressional choice to waive longstanding rule that government is not liable for interest).

The Randolph-Sheppard Act requires states to agree to consent to resolving disputes by arbitration proceedings as a condition of their participation in the program. Agreeing to arbitration means that states can be found liable for violations of the Act and subject to some form of relief; it does not mean that they are required to submit to awards of money damages. As a dispute resolution mechanism, arbitration can encompass multiple remedies, including many that are not monetary in nature. That is, although arbitration might be read to include damage awards, it is at least equally plausible that it may not, as the differing opinions of the courts of appeals demonstrate. Compare Premo, 119 F.3d 764, and Delaware Dept. of Health & Social Services, 772 F.2d 1123, with Ramsey, 366 F.3d at 1, Tennessee Dept. of Human Services, 979 F.2d 1162 (Eleventh Amendment does not permit blind

15

licensee to sue state in federal court for enforcement of arbitration award), and McNabb, 862 F.2d 681.  States should not be held subject to damage awards that could expose them to potentially significant financial liability without being fully and clearly informed of this possibility.   Pennhurst State School & Hospital, 451 U.S. at 17-18 (states must be "cognizant of the consequences of their participation" in federal programs); see also McNabb, 862 F.2d at 686-87 (Fagg, J., concurring and dissenting) (stating that exposing states to monetary awards under the Randolph-Sheppard Act is "entirely at odds with the principle that the congressional power to impose conditions on participating states rests on the indispensable requirement that its conditions are expressly articulated").

I conclude that Randolph-Sheppard arbitration panels cannot subject the states to damage awards.  However, the arbitration panel must have the authority to grant some relief to blind licensees in order to give meaning to the arbitration provisions.  When a sovereign waives immunity to some form of relief, but not to damage awards, it is appropriate to uphold declaratory or prospective injunctive relief.  Nordic Village Inc., 503 U.S. at 35 (finding that although the United States did not waive its sovereign immunity to damage awards under the Bankruptcy Code, the Code could be interpreted to provide injunctive and declaratory relief based on the "familiar distinction between suits for monetary claims and suits for other relief"); see also Nelson, 570 F.3d at 883.  Thus, I conclude that although plaintiff did not waive its sovereign immunity to damage awards, it did waive its immunity

16

to arbitration proceedings, determinations of liability and prospective injunctive relief. Therefore, I conclude that the doctrine of sovereign immunity does not require reversal of the arbitration panel's decision that plaintiff must help defendant Dickey in developing, expanding and upgrading her present facility, but the panel's award of damages to Dickey must be vacated.


B. Non-jurisdictional Challenges

An arbitral award under the Randolph-Sheppard Act is reviewed as a final agency action of the United States Department of Education under the standards set forth in the Administrative Procedures Act.  20 U.S.C. § 107d-2.   A court reviewing a final agency action should not re-weigh the evidence or replace the agency's judgment with its own. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971).  However, the arbitral decision can be held unlawful and set aside if it is found to be "(a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (b) contrary to constitutional right, power, privilege, or immunity; (c) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . or (e) unsupported by substantial evidence . . ."  5 U.S.C. § 706(2).

Plaintiff raises several Administrative Procedures Act challenges to the arbitration panel's decision:  (1) the panel's decision was in excess of its statutory authority because the

Randolph-Sheppard Act does not allow an arbitration panel to award damages; (2) the panel's decision was arbitrary and capricious because defendant Dickey had no right to any substantive remedy; (3) the arbitration panel's decision was arbitrary and capricious because it was not based on findings of fact or conclusions of law; (4) the arbitration panel's decision was not based on substantial evidence; and (5) the damages award was not supported by sufficient evidence.

1. Panel's decision exceeded statutory authority

I understand plaintiff's first objection under the Administrative Procedures Act to be premised on the terms of the Randolph-Sheppard Act and not the Eleventh Amendment. Although I agree with defendant Dickey that plaintiff waived this first objection by not raising it during arbitration, United States v. L.A. Truck Lines, Inc., 344 U.S. 33, 37 (1952) (holding that any objections not made before administrative agency are subsequently waived before reviewing courts); Ester v. Principi, 250 F.3d 1068, 1072 (7th Cir. 2001); see also Sims v. Apfel, 530 U.S. 103, 109 (2000) (requiring issue exhaustion is especially appropriate when agency proceeding was adversarial), the issue is of no practical significance, in light of my determination that plaintiff is immune from liability for a damages award.

2. Defendant's right to a substantive remedy

Plaintiff never argued during arbitration that Dickey had no right to a substantive remedy.  Its statement of the issue for the panel was: "Did [plaintiff] comply with its responsibilities under the Randolph-Sheppard Act and Chapter 47, Wis. Stats., in relation to the Full Food Services contract which was in effect at Fort McCoy between April 1, 2003 and September 30, 2006."  By defining the issue in this way, plaintiff seemed to be conceding that Dickey had cited specific laws that imposed substantive obligations on plaintiff.  It cannot raise a new argument now that these laws do not offer Dickey any substantive remedy, albeit one that does not include monetary compensation.

3.  Arbitrary and capricious review

In reviewing an agency's decision under the arbitrary and capricious standard, the court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  Reilly v. Blue Cross and Blue Shield United of Wisconsin, 846 F.2d 416, 420 (7th Cir. 1988) (citing Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm Mutual Automobile Insurance Co., 463 U.S. 29, 43 (1983) (defining arbitrary and capricious standard for decision by federal agency).  If a decision is based on "rational justifications," it is not arbitrary and capricious.  Mt. Sinai Hospital Medical Center v. Shalala, 196 F.3d 703, 709 (7th Cir. 1999).

19

Plaintiff contends that the arbitration panel "failed to include any findings of fact." However, the arbitration panel based its decision on numerous findings of fact that it gleaned from a substantial record submitted by the parties. In particular, the panel found as fact that plaintiff was primarily responsible for managing the Fort McCoy contract, that the Army told plaintiff about numerous problems with the performance of the contract, that plaintiff failed to properly respond to the Army's complaints and that, as a result, the Army decided not to renew the contract for a fourth year.

In its reply brief, plaintiff contends for the first time that even if the arbitration panel did make findings of fact, its factfinding was erroneous. Plaintiff contends that the arbitration panel was mistaken when it found a "failure of the contract" between plaintiff and the Army and that this finding of fact mischaracterizes the situation because the contract was not actually breached but was simply not extended for another term.

Plaintiff did not raise this argument until filing its reply brief, so it cannot be considered, Nelson v. La Crosse County Dist. Attorney, 301 F.3d 820, 836 (7th Cir. 2002) ("It is well settled that issues raised for the first time in a reply brief are deemed waived."), but even if I were to consider it, I would find it unpersuasive. The panel's decision indicates that the panel was fully aware that both the Army and plaintiff decided not to exercise the fourth year option under the contract. In context, the panel's statement regarding the "failure of the contract" refers simply to plaintiff's failure to comply with the contract

20

requirements.

The panel's decision also includes the panel's legal conclusions.  The panel concluded that plaintiff did not comply with its responsibilities under the Randolph-Sheppard Act and Chapter 47 of Wis. Stats. in managing the Fort McCoy contract.  The panel also concluded that plaintiff has a responsibility for defendant Dickey's welfare.

Finally, plaintiff is wrong when it asserts that the panel "failed to respond to plaintiff's legal arguments in its decision."  At the outset of the arbitration hearing, plaintiff stated that the issue for the panel was whether plaintiff "compl[ied] with its responsibilities under the Randolph-Sheppard Act and Chapter 47, Wis. Stats. . . ."  This was the only legal issue raised by plaintiff during arbitration.  The panel had no reason to provide a legal analysis of the statutory and constitutional questions that plaintiff now raises.  The arbitration panel did not act arbitrarily or capriciously when it decided that plaintiff had failed to manage the Fort McCoy contract properly.  It considered the relevant factors and its "path may be reasonably discerned."  <u>Israel v. United States Dept. of Agriculture</u>, 282 F.3d 521, 526 (7th Cir. 2002) (quoting <u>Mt. Sinai Hospital Medical Center</u>, 196 F.3d at 708.

4. <u>Substantial evidence review</u>

Substantial evidence review requires courts to determine whether there is a rational

relationship between the facts found and the ultimate decision that was reached.  Mt. Sinai Hospital Medical Center, 196 F.3d at 709; Local 65-B v. National Labor Relations Board, 572 F.3d 342, 347 (7th Cir. 2009) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").  Technically, this is not the same standard of review as arbitrariness and capriciousness, but the difference is almost indistinguishable.

In this case, the arbitration panel's decision is supported by substantial evidence.  The detailed administrative record contains evidence that plaintiff was the lead contractor with ultimate authority in the relationship among the Army, plaintiff, Blackstone and defendant Dickey.  The record shows that Dickey voiced complaints about Blackstone's performance under the contract in the fall of 2005, almost one year before Fort McCoy made the decision not to renew the contract.  Despite those complaints, the performance of the contract deteriorated throughout 2006.  The record also shows that plaintiff was aware that the Army was holding plaintiff ultimately responsible for performance of the contract and responsible for correcting the deficiencies.  These facts are sufficient to allow the arbitration panel to reach the rational conclusion that plaintiff failed to comply with its responsibilities under state and federal law, that this failure caused the Army to decide not to renew the contract and that it resulted in Dickey's loss of her vending site.

5. Factual basis for defendant Dickey's damages award

It is not necessary to address plaintiff's final argument that the panel's damages award was not well reasoned or supported by sufficient evidence. Now that I have found that the state is immune from a retroactive damages award, the issue is moot.

C.  Attorney Fees and Costs

Defendant Dickey has filed a claim against plaintiff for reasonable attorney fees and expenses incurred in defending this action. (Dickey does not request attorney fees for the underlying arbitration proceeding because she represented herself during the arbitration.) In federal courts, the general rule is that parties pay their own attorney fees unless they can point to specific authority, such as a statute, regulation or contractual language that allows fee shifting. Chambers v. Nasco, Inc., 501 U.S. 32, 45 (1991) (recognizing that the "American rule" prohibits fee shifting in most cases). Dickey relies on the Equal Access to Justice Act, which provides:

> An agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust. . . .

5 U.S.C. § 504(a)(1).

The Equal Access to Justice Act applies only to certain adjudicative proceedings

23

conducted by federal agencies in which "the position of the United States is represented by counsel" and is adverse to the party seeking attorney fees.  5 U.S.C. § 504(b)(1)(C).  The Act does not apply in this case because the underlying arbitration was not such an adverse proceeding.  Although a *state* agency was in a position adverse to Dickey, no federal party was involved in the dispute.  The Department of Education merely facilitated the arbitration and was not adverse to Dickey.  This conclusion is consistent with the Department of Education's own interpretation of the Equal Access to Justice Act as it applies to the Randolph-Sheppard program.  61 Fed. Reg. 16700-01(April 16, 1996) (noting that Equal Access to Justice Act "is unrelated to the Randolph-Sheppard program and authorizes Department support of fees and expenses only in certain adjudicative proceedings to which the Department is a party").  Because Dickey has not pointed to any authority allowing her to recover attorney fees, the American Rule governs and all parties must pay their own fees.

D.   Prejudgment Interest

Defendant Dickey has requested prejudgment interest on the $225,000  from the date of the panel's arbitration award, but her request has been made moot by the finding that the state cannot be liable for retroactive money damages.

24

ORDER

IT IS ORDERED that

1.  The arbitration panel's decision that plaintiff State of Wisconsin Department of Workforce Development, Division of Vocational Rehabilitation, violated the Randolph-Sheppard Act and Wis. Stat. § 47.03(4) by failing to properly supervise the Fort McCoy full food service contract is AFFIRMED in all respects except with respect to its decision that plaintiff owes defendant Janet Dickey $225,000.00 in compensatory damages; in this respect, the decision is REVERSED.

2.  Defendant Dickey's request for attorney fees and prejudgment interest is DENIED.

3.  The clerk of court is directed to enter judgment accordingly and close the case.

Entered this 3rd day of November, 2009.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge